Whitaker, Judge,
concurring:
I agree that the motion for reconsideration should be overruled, but I do so only because of the particular facts of this case. I think that part of our opinion which holds that the statute of limitations does not begin to run until adverse action of the Correction Board should be limited to the facts of this particular case.
Even under those facts I was reluctant to agree, since I thought that the sounder view was that the statute began to run when plaintiff declined the offer of consideration of *158 bis rights by a retiring board. I agreed only because both he and the doctors were ignorant of the actual nature of his injury when he declined the offer. Had the plaintiff and the Army known of his true condition at that time, I think his cause of action would have then accrued.
Furthermore, when such a case is presented to us, I would hold that the adverse decision of a Disposition Board, or other board clothed with authority to determine whether a person’s physical condition warrants sending him before a Betiring Board, such adverse decision starts the running of the statute of limitations against an action for disability retirement benefits, unless the nature of the physical ailment of the person being retired could not have been discovered by careful examination by qualified doctors.
The statute of limitations begins to run from the date of the denial of a right, or the failure to assert it when it is called in question, or when competent authority offers to adjudicate it and the offer is declined.
In plaintiff’s case, however, it is stated that “neither he nor the doctors were fully aware of the nature and extent of the disability until after plaintiff’s release from active duty.” In addition, plaintiff was greatly concerned over the immediate needs of his family: his wife was in a mental hospital; his children were without a home and were living with relatives; his father needed an operation for cancer. A quick separation from the service seemed imperative. He was told that retiring board proceedings might require additional hospitalization of some length, and that a hardship release would be much speedier. In addition, he thought that he could “get along” or “make his own way” in civilian life. Plaintiff was under duress of compelling necessity.
Where such facts exist, a plaintiff’s right to seek redress in court is not foreclosed by declining a retiring board, but in the absence of equally extenuating circumstances, I think he is.
The Correction Board was set up to prevent injustices. It would be unjust, certainly inequitable, to bar a man from asserting his rights where he acted in excusable ignorance of his true condition, which could not have been discovered *159 by the exercise of due care. But the Correction Board was not set up as an alternative to the Retiring Board. Where a person knows he has a right to go before a Retiring Board and declines to do so, he cannot later appeal to a Correction Board to save him from his wanton disregard or neglect of a right the law gives him. He cannot thus extend the period within which he must come into court to assert his claim. If he can refuse to go before a Retiring Board when he is aware that he is entitled to retirement for physical disability and allow six years to elapse before coming to this court, and then later appeal to the Correction Board, and then come to this court, he has thwarted the requirement that he assert his claim within six years from the time it accrued.
I think the motion for reconsideration should be overruled, but I think our opinion must be confined to the limits set out above.
This is not to say that, even though he has lost his right to come into this court, he may not still take his case to the Correction Board. Congress fixed a limitation for appealing to that board which extends beyond the period in which a person was required to invoke the aid of the court. After his legal remedy had been barred by the lapse of time, or even after legal redress had been denied him, he might still appeal to the Correction Board, which Board might grant him relief as a matter of grace. But the denial of relief by the Correction Board does not revive the right to seek redress in court. He has already had, or has had the opportunity to have, his day in court, and Congress did not intend to give him another day. It only intended to give him such relief as the Correction Board might think was merited.
I concur with what we said in Friedman v. United States, ante, p. 1, at the same time as the Harper opinion, and I do not think what I have said above conflicts with our opinion in that case, but is in harmony with it. Nor do I think it conflicts with either Proper v. United States, 139 Ct. Cl. 511 or Patterson v. United States, 141 Ct. Cl. 435. In both of them plaintiff’s malady was discovered after his discharge.